## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**Sandra Flores-Rivera,**

   Petitioner

      v.

**United States of America,**

   Respondent.

CIVIL NO. 16-2350 (PG)
Related Crim. No. 07-0318-8 (PG)

## **OPINION AND ORDER**

Before the court is petitioner Sandra Flores-Rivera's (henceforth "Petitioner" or "Sandra Flores") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1) and the United States' (or the "government") opposition thereto (Docket No. 15). For the following reasons, the court **DENIES** Petitioner's motion to vacate.

## I.    BACKGROUND

On February 5, 2008, Sandra Flores, alongside another forty-six codefendants, were indicted by a grand jury in Criminal Case No. 07-318 (PG). Sandra Flores was charged in Count One for conspiracy to possess with the intent to distribute narcotics within one thousand feet of a public housing project or a public school, in violation of 21 U.S.C. §§ 841, 846, and 860. See Crim. No. 07-318 (PG), Docket No. 478. Count Two charged a conspiracy to possess firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A) and (O). Counts Three through Six charged Petitioner with aiding and abetting in the possession with intent to distribute narcotics in violation of 21 U.S.C. §§ 841 and 860, and 18 U.S.C. § 2. See id. at 6-28.

On October 13, 2009, the government filed an information pursuant to 21 U.S.C. § 851, notifying the court that Petitioner had a previous felony drug conviction, subjecting her to a statutory mandatory minimum of twenty years as to Count One. See Crim. No. 07-318 (PG), Docket No. 1562. At trial, the government introduced three cooperating witnesses: Harry Smith Delgado ("Delgado"), Xiomara Berrios-Rojas ("Xiomara"), and Andy Marcano ("Marcano"). Delgado testified that he was a part of the conspiracy, and that Sandra Flores served as both a runner and a seller of cocaine, crack, and marijuana. See United States v. Flores-Rivera, 787 F.3d 1, 10 (1st Cir. 2015). Xiomara and Marcano corroborated Delgado's testimony regarding Sandra Flores' role in the drug trafficking organization. See id. Additionally, the government presented video evidence showing that Sandra Flores was a member of the charged drug trafficking conspiracy, thereby corroborating all three testimonies. See Crim. No. 07-318 (PG), Dockets No. 1583, 1602. Central to the defendants' trial strategy was an attempt to impeach Delgado, Xiomara, and Marcano by suggesting that they had colluded to fabricate their testimonies. See Flores-Rivera, 787 F.3d at 10. Nevertheless, the jury found Sandra Flores guilty as to Counts One, Three, Four, Five and Six of the indictment. See Crim. No. 07-318 (PG), Docket No. 1652.

At some unspecified time before trial, Delgado sent the lead prosecutor a handwritten letter, which was not promptly disclosed to defendants. See Flores-Rivera, 787 F.3d at 11. Likewise, two handwritten notes that Delgado kept, which contained details of his conversations with two other co-conspirators were not timely disclosed. The belated production of these materials set off a series of post-trial evidentiary hearings and motions presented by Sandra Flores and her codefendants, Carlos Omar Bermudez-Torres ("Omar") and Cruz Roberto Ramos-Gonzalez ("Ramos"). Between 2010 and 2013, the district court wrote four separate opinions denying the appellants' various requests for a new trial, which were grounded on these belated productions.

These four opinions provide a detailed account of each of the hearings conducted by, and motions submitted to, the district court. See United States v. Ramos-Gonzalez, 747 F.Supp.2d 280, 284-89 (D.P.R. 2010); United States v. Ramos-Gonzalez, Crim. No. 07-318, 2011 WL 2144215, at *1-2 (D.P.R. May 31, 2011); Opinion and Order, Crim. No. 07-318, Docket No. 2972 at 1-3, July 30, 2012; Opinion and Order, Crim. No. 3166 at 1-6, August 9, 2013.

After denying her motion for new trial, the district court sentenced Sandra Flores to an imprisonment term of two hundred forty months as to Count One, to be served concurrently with one hundred eighty-eight months as to Counts Three, Four, Five, and Six. See Crim. No. 07-318, Docket No. 2626.

On March 29, 2011, Sandra Flores filed a timely notice of appeal. See Crim. No. 07-318, Docket No. 2624. Unlike her codefendants, Omar and Ramos, Sandra Flores did not renew on appeal her argument regarding the evidence that was produced belatedly. The First Circuit Court of Appeals found that these materials warranted that Omar and Ramos be tried again. As a result, the First Circuit remanded Omar and Ramos' cases to the district court, and affirmed the convictions and sentences of Sandra and Sonia Flores-Rivera. Flores-Rivera, 787 F.3d at 33. Petitioner did not file a petition for *certiorari*.

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

### III. DISCUSSION

On June 14, 2016, Sandra Flores filed a motion to vacate under 28 U.S.C. § 2255 attacking the legality of her sentence on five different grounds. See Docket No. 1. In Grounds One and Three, Petitioner alleges that the prosecution violated her right to Due Process when it failed to turn over Delgado's letter and notes, and she contends that her appellate counsel was ineffective for failing to renew this claim on appeal. In Ground Four, Sandra Flores argues that her sentence was unconstitutionally enhanced because the court erred in determining that her prior conviction for simple possession of marijuana under P.R. LAWS ANN. tit. 24, § 2404 is a "felony drug offense" under 21 U.S.C. § 841(b)(1)(A). Therefore, Petitioner contends that the prior conviction information presented by the government pursuant to 21 U.S.C. § 851 was unwarranted, and she should not have been subjected to the mandatory minimum sentence imposed under 21 U.S.C. § 841(b)(1)(A). Lastly, Petitioner argues in Grounds Two and Five that she received ineffective assistance of counsel because trial counsel abandoned her during the post-trial proceedings and her trial and appellate counsels failed to successfully challenge the application of a two-point enhancement on Petitioner's sentencing guidelines calculation under U.S.S.G. § 2D1.1(b)(1). Each of these arguments will be addressed in turn.

#### A. Brady Claim

Firstly, Sandra Flores claims in Ground One that the government violated her right to Due Process by failing to promptly turn over exculpatory or impeaching evidence in relation to Delgado's testimony. See Docket No. 1, at 10. Additionally, in Ground Three Petitioner alleges that she received ineffective assistance of counsel when her appellate counsel failed to raise the issue on appeal. See Docket No. 1 at 11.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that the prosecution violates due process when it suppresses evidence favorable to the accused and said evidence is

material to determining guilt or punishment. See Brady 373 U.S. at 87. A true Brady violation has three components, namely: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999).

Despite the foregoing, a § 2255 motion is not a substitute for a direct appeal, therefore "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Furthermore, a significant bar on habeas corpus relief is placed on a defendant when she fails to raise her claims at trial or on direct review. In such cases, "a court may hear those claims for the first time on habeas corpus review only if the petitioner has 'cause' for having procedurally defaulted [her] claims, and if the petitioner suffered 'actual prejudice' from the errors of which [she] complains." Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007).

It has long been understood that "[o]ne way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984)." Wilder v. United States, 806 F.3d 653, 658 (1st Cir. 2015). Petitioner must show actual prejudice by establishing that there is a "reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Jackson v. Marshall, 634 F.Supp.2d 146, 160 (quoting Strickler, 527 U.S. at 289). Therefore, "[w]e do not . . . automatically require a new trial whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." United States v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)).

In order to establish ineffective assistance of counsel, Petitioner must prove that her attorney's performance was deficient and the deficient performance prejudiced her defense. See Strickland, 466 U.S. at 687. Under Strickland, the burden of proving counsel's deficiency falls squarely on the shoulders of the defendant, who must overcome "the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Id., at 689. Furthermore, failure to satisfy either prong of the Strickland test is fatal. See id., at 697. As a result, the court is free to choose which prong to analyze first.

In the present case, Sandra Flores' discovery violation claim under Brady is procedurally barred because her appellate counsel failed to present this claim on direct appeal. Petitioner proves neither that she has cause excusing her procedural default, nor does she prove that she suffers actual prejudice from the government's error. Normally, "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable would constitute cause." Jackson, 634 F.Supp.2d at 159 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). But here, the government gave Sandra Flores' and her codefendants' trial counsels the alleged impeachment evidence, therefore the factual basis for the claim was available to Sandra Flores at the time of appeal. In fact, Sandra Flores used said evidence as a means of supporting her motion for a new trial. See Flores-Rivera, 787 F.3d at 15 n. 7. Despite being fully aware of his ability to do so, Petitioner's appellate counsel did not present this argument on direct appeal. See id.

Sandra Flores attempts to excuse her failure to present the Brady claim on appeal by alleging that she received ineffective assistance of counsel. Petitioner bases her ineffective assistance of counsel claim on the First Circuit's statement that:

> Sandra's trial counsel joined Ramos and Omar in petitioning the district court for a new trial after the prosecutor turned over Delgado's letter and notes in 2010. Her appellate counsel has not renewed this claim on appeal. Counsel was clearly aware of his ability to adopt a co-appellant's arguments in a consolidated case pursuant to Federal Rule Appellate Procedure 28(i), since he reserved his right to do so in Sandra's opening brief. But counsel never filed a reply brief after the court granted him an extension, nor did he make a motion to adopt the other appellant's arguments

Flores-Rivera, 787 F.3d at 15 n. 7. As the following analysis will highlight, her claim fails the second prong of the Brady and Strickland tests. In essence, Petitioner cannot show prejudice. During her trial, the government presented significant corroborating evidence implicating her in the drug trafficking conspiracy. As a result, she is not similarly situated to her two codefendants, Ramos and Omar, whose requests for new trials were granted. In fact, the First Circuit based its decision to grant Ramos and Omar a new trial on the fact that the government failed to present additional evidence with probative value corroborating Delgado's testimony, which could have been challenged by the belatedly produced Brady materials. See id., at 11. But, despite the First Circuit's statements, here, Petitioner cannot show the prejudice prongs of the Brady and Strickland tests.

Sandra Flores' participation in the drug trafficking organization was not supported solely on Delgado and the other cooperating witnesses' testimonies, as the government presented the jury a series of videotape recordings directly implicating her in the crime. See Crim. No. 07-318, Dockets No. 1583, 1602. The Supreme Court has held that "evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." Smith v. Cain, 565 U.S. 73, 76 (2012). The videos presented to the jury show that Sandra Flores operated a drug point and corroborates Delgado, Xiomara, and Marcano's testimonies that Petitioner was a seller and runner of illicit drugs. For example, during the jury trial on October 19, 2009, Delgado was shown and questioned about a video

displaying Sandra Flores "tallying up" drugs and money with her brother, Alex Flores-Rivera, before changing shifts as drug sellers:

> Ms. Avila, AUSA : What other way, if any, could the seller tally up to turn over the shift to the other seller?
>
> Delgado: He could tally up with the other person that was going to continue selling. They would count the drug, they would count the money and they would tally up among themselves and they would give each other – the person that was leaving the shift would give the drug over and then that person would take the drug, he would take the money and they would tally up and then they would running [sic] the shift.
>
> Ms. Avila, AUSA: I'm going to show you, sir, play again at 4:53:38, so on, December 8, 2006. Can you please tell the jury what you are observing?
>
> Atty. Hill-Adames: Objection again, Your Honor, lack of personal knowledge. This witness was not present when this is happening.
>
> The court: Denied.
>
> Delgado: Do I answer?
>
> The court: Yes.
>
> Delgado: Right now, Sandy [Flores-Rivera] is the [sic] tallying up with her brother, with Alex, and as you can see the time, it's 4:54. It's just about 5 o'clock, which is the change of shift of the sellers.

Crim. No. 07-318, Docket No. 1583 at 99.

Additionally, on October 23, 2009 the jury was shown another video that displayed Sandra Flores participating in numerous drug transactions with the then testifying witness, Xiomara. When questioned about one such instance, Xiomara's testimony reads as follows:

> Ms. Avila, AUSA: And I pause it at 3:50:25 p.m. Who is the person that is to the side of you?
>
> Xiomara: Sandra and I.
>
> Ms. Avila, AUSA: Which Sandra, La Caderua or Flores?
>
> Xiomara: Sandra Flores.
>
> Ms. Avila, AUSA: I'm pausing at 3:50:32. As I'm playing the video, I'm going to put it on play, you can describe to the jury what you are seeing, okay?
>
> Xiomara: Yes, Prosecutor. They are giving us money and I go to where I have the stash to get the material.

Crim. No. 07-318, Docket No. 1602 at 29, 30.

Later on, Xiomara identifies Sandra Flores in another instance in which she was caught on video selling drugs:

> Ms. Avila, AUSA: Let me phrase it this way, ma'am. Based on your personal observations and your experience as a seller at this drug point and working as a seller also with Sandra Flores Rivera' [sic] drug point, I'm taking you to 2-8-2006, at 4:31:42, so on, and playing it for you. Can you please tell the jury what you are observing?
>
> Xiomara: Sandra is given the money. She counts it. Takes more money.

| | |
|---|---|
| Atty. Hill-Adames: | Same objection, Your Honor. |
| The court: | Denied |
| Xiomara: | She gets up. She goes into the house. |
| Ms. Avila, AUSA: | And I pause at 4:35:05. Does she go into her house, ma'am? |
| Xiomara: | No, she did not go in. |
| Ms. Avila, AUSA: | What does she do? What do you observe? |
| Xiomara: | She gives the money to someone. |
| Ms. Avila, AUSA: | Ma'am, have you see this done before as a seller there at this drug point? |
| Xiomara: | Yes. |
| Ms. Avila, AUSA: | Is this common or uncommon? |
| Xiomara: | Yes. |
| Ms. Avila, AUSA: | Yes, what, common or uncommon? |
| Xiomara: | Yes, common. |
| Ms. Avila, AUSA: | And I'm playing it again. |
| The court: | That's Marjorie, isn't it? |
| Xiomara: | Yesca. See, she went there, she got the material, and she gave it to him, to the addict. |
| Ms. Avila, AUSA: | Do you know who the addict is, ma'am? |

| | |
|---|---|
| Xiomara: | I do not know him by name, but he is from Maunabo. |
| Ms. Avila, AUSA: | And how do you know he is from Maunabo? Have you seen him before? |
| Xiomara: | Yes. |
| Ms. Avila, AUSA: | And when you say "she" gave the material to the addict, the one that you described as the one from Maunabo, who do you refer to, Yesca or Sandy? |
| Xiomara: | To Sandra Flores. |
| | […] |
| Ms. Avila, AUSA: | Ma'am, and what type of drugs did Sandra Flores Rivera sell at the drug point? |
| Xiomara: | Everything. |

Id., at 37-38, 39.

As was previously indicated, a true Brady violation requires that Petitioner prove that the suppression of the evidence in question caused her prejudice. See Greene, 527 U.S. 281-282. In the present case, the belatedly produced evidence did not prejudice Petitioner because there was sufficient corroborating evidence implicating her in the criminal venture. See Crim. No. 07-318, Docket No. 1602 at 29, 37-41, 53. Unlike her codefendants, Ramos and Omar, Delgado's testimony was not the sole means for determining Petitioner's guilt. In her case, the videos shown to the jury illustrating that Petitioner worked as a drug runner and seller contravenes the argument that there is a reasonable probability that the results of the trial could have been different had the Brady documents been turned over in a timely manner. Thus, because Sandra Flores cannot prove that the belatedly produced evidence prejudiced her, she

fails the prejudice prongs of the Brady and Strickland tests. Accordingly, her motion to vacate is **DENIED** on those grounds.

**B. Sentencing Enhancement Challenge**

In Ground Four, Sandra Flores argues that her sentence violates the Eighth Amendment and her right to Due Process because the information filed pursuant to 21 U.S.C. § 851 was done for an improper purpose and resulted in a sentence that is excessive and disproportionate.[1] See Docket No. 1 at 13. Specifically, Petitioner contends that her prior conviction for simple possession of marijuana under P.R. LAWS ANN. tit. 24, § 2404 does not qualify as a "felony drug offense" pursuant to § 851. Petitioner asks the court to waive her procedural default of these claims because both her trial and appellate counsels were ineffective by failing to argue that her prior conviction was not a qualifying felony. Her arguments hold no water.

First, the record contradicts Petitioner's assertion that her trial counsel failed to challenge the § 851 enhancement. On February 20, 2011, Petitioner's trial counsel filed the appropriate objection to the § 851 enhanced penalty, which was subsequently denied by the court on March 21, 2011. See Crim. No. 07-318, Dockets No. 2597, 2617. Moreover, Petitioner's trial counsel once again objected to the imposition of the enhanced penalty during her sentencing hearing. See Crim. No. 07-318, Docket No. 2683, at 7. As such, Sandra Flores' claim that her trial counsel abandoned her in regards to this issue is inaccurate and belied by the record of this case.

Second, Petitioner's appellate counsel was under no obligation to present the aforementioned objection, as the objection itself lacked merit. Sandra Flores relies on the First Circuit's decision in United States v. Davila-Felix, 667 F.3d 47 (1st Cir. 2017), which held that

---

[1]The proceedings for establishing that a defendant has a prior conviction for sentencing calculation purposes are outlined in 21 U.S.C. § 851.

a conviction for possession of cocaine and marijuana with intent to distribute under P.R. LAWS ANN. tit. 24, § 2401 "cannot categorically qualify as a 'controlled substance offense' within the meaning of § 4B1.2(b) because it criminalizes conduct that falls outside the guidelines definition." Id., at 56.

Petitioner's argument fails because the issue in Davila-Felix centered on whether or not the defendant's previous possession conviction qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2(b).[2] In the present case, the government filed the information pursuant to § 851 in order to prove that Petitioner qualified for the mandatory minimum sentence imposed in 21 U.S.C. § 841(b)(1)(A). Said section states that when a defendant violates § 841(b)(1)(A) "after a prior conviction for a **felony drug offense** has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . ." 21 U.S.C. § 841(b)(1)(A) (emphasis added). "Controlled substance offense" is no synonym for "felony drug offense."

The term "felony drug offense" is defined in 21 U.S.C. § 802(44) as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, **marihuana**, anabolic steroids or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added). See United States v. Robertson, 459 F.3d 39, 51 (1st Cir. 2006) (holding that "the definition of 'felony drug offense' contained in § 802(44) unambiguously controls for the purposes of determining whether the penalty enhancement in § 841(b)(1)(A) is triggered");

---

[2] Section 4B1.2(b) defines a "controlled substance offense" as any offense under federal or state law that is "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or disperse." U.S.S.G. § 4B1.2(b).

Burgess v. United States, 553 U.S. 124, 135 (2008) (holding that, via the definition in § 802(44), "Congress expressly defined the term 'felony drug offense.' The definition is coherent, complete, and by all signs exclusive."). Moreover, the statute under which Sandra Flores' previous conviction rests reads as follows:

> It shall be unlawful for any person, knowingly or intentionally, to possess any controlled substance, unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as authorized by this chapter.
>
> Any person who violates this subsection shall be guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment for a fixed term of **three (3) years**. Should there be aggravating circumstances, the fixed penalty established may be increased to a maximum of **five (5) years**; if there should be extenuating circumstances, it may be reduced to a minimum of **two (2) years**.

P.R. LAWS ANN. tit. 24, § 2404(a) (emphasis added). The conduct prohibited by § 2404 squarely fits the definition of a "felony drug offense" under §§ 841(b)(1)(A) and 802(44). First, said statute prohibits conduct relating to narcotic drugs, including marihuana. Second, the least culpable version of the offense is punishable by a period of imprisonment of more than one year.

As a result, Sandra Flores' prior conviction for simple possession of marihuana under § 2404 constitutes a "felony drug offense" for the purpose of applying the increased minimum sentence imposed in § 841(b)(1)(A). Any argument that her appellate counsel could have presented stating otherwise would have been meritless. See Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (holding that trial counsel is "under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel"). Ultimately, Petitioner's argument that her sentence violates the Eighth Amendment and Due Process, and that her appellate counsel was ineffective for not challenging it, necessarily fails because the § 851 information was filed correctly by the government, and the § 841(b)(1)(A) sentencing

enhancement was properly applied. Due to Petitioner's failure to excuse the procedural default of her claim, and due to her argument's lack of merit, her petition is **DENIED** on those grounds.

### C. Additional Ineffective Assistance of Counsel Claims

Lastly, Petitioner's remaining two grounds consist of additional allegations that she received ineffective assistance of counsel. Sandra Flores first claims in Ground Two that her trial counsel abandoned her during the post-trial proceedings. See Docket No. 1 at 10. Specifically, Petitioner contends that although her trial counsel filed a motion to join the post-trial proceedings, she failed to participate in them. See id. But, the record shows otherwise. Contrary to Petitioner's assertions, the record demonstrates that Petitioner's counsel was present and actively participated in the evidentiary hearing for the motion for new trial. See Crim. No. 07-318, Docket No. 2354; id., Docket No. 2364 at 114-118. As a result, the ineffective assistance of counsel claim on this ground is thus **DENIED**.

In her fifth and final ground, Sandra Flores contends that her trial and appellate attorneys provided ineffective assistance because they failed to effectively challenge a two point enhancement imposed on her guideline calculation under U.S.S.G. § 2D1.1(b)(1). See Docket No. 1 at 5. Although Petitioner recognizes that her trial counsel indeed challenged the enhancement, she insists that said challenge failed solely because her counsel did not adequately research the issue. In support of her argument, Petitioner alleges that her similarly situated codefendants did not receive the enhancement. See Docket No. 1 at 14.

The ineffective assistance of counsel claim fails on this ground because the district court correctly applied the enhancement. The statute in question, U.S.S.G. § 2D1.1(b)(1), provides that a defendant's base offense level is increased by two levels "if a dangerous weapon

(including a firearm) was possessed" in the furtherance of a federal crime. Petitioner's codefendant, Sonia Flores-Rivera, challenged this very enhancement on appeal. The First Circuit held that the "firearm enhancement applies 'whenever a codefendant's possession of a firearm in furtherance of their joint criminal venture [is] reasonably foreseeable' by the defendant." Flores-Rivera, 787 F.3d at 32 (quoting United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991)). The First Circuit further established that "'because firearms are considered common tools of the drug trade,' where firearms are used in furtherance of drug offenses, the two-level 'enhancement should be applied if [a] weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" Flores-Rivera, 787 F.3d at 33 (quoting United States v. Thongsophaporn, 503 F.3d 51, 58 (1st Cir. 2007)).

The Court held then that the § 2D1.1(b)(1) enhancement was warranted because it was not "clearly improbable" from Sonia Flores-Rivera's perspective that firearms would be used during and in furtherance of the drug trafficking conspiracy. See Flores-Rivera, 787 F.3d at 33. Following the same logic, it was reasonably foreseeable for Sandra Flores that weapons would be used in furtherance of the drug trafficking conspiracy. The trial testimony showed that Sandra Flores, like Sonia Flores-Rivera, was a runner of cocaine, crack, and marijuana, and that she would stash those kinds of drugs for the drug trafficking organization. Additionally, Petitioner had contact with several other co-conspirators, including Delgado, who had a propensity for carrying and using firearms.[3]

Because Sandra Flores was similarly situated to her sister, Sonia Flores-Rivera, the § 2D1.1(b)(1) enhancement was warranted and her trial counsel was not ineffective for not prospering. Any additional research performed by her counsel would have only supported the

---

[3] "Delgado had a reputation for donning a bulletproof vest and frequently firing guns while at the housing project. He testified that he was armed 'all the time.'" Flores-Rivera, 787 F.3d at n. 29 (2015).

court's determination. Therefore, Petitioner's ineffective assistance of counsel claim on this ground fails the second prong of the Strickland test, as she fails to prove that her counsel's actions caused her prejudice. Furthermore, Petitioner's counsel had no reason to further develop or insist on an argument that was meritless. See Acha, 910 F.2d at 32. As a result, the present argument is unfounded, and her motion to vacate is hereby **DENIED** on those grounds.

## IV.   CONCLUSION

Based on the foregoing, the court **DENIES** Petitioner's request for habeas relief under 28 U.S.C. § 2255 (Docket No. 1). As such, the case is **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

## V.   CERTIFICATE OF APPEALABILITY

It is further ordered that no certificate of appealability should be issued in the event that the Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, August 31, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE**